UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal No. 6:17-cr-00008-GFVT-HAI |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SHARON HALL, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court on the Defendant's motion for release pending appeal. [R. 148.] Because she has not adequately raised a substantial question of law or fact likely to result in reversal[1], this motion must be **DENIED**. *See* 18 U.S.C. § 3143(b).

**I**

In February 2017, Sharon Hall was indicted on eleven counts of bank fraud, in violation of 18 U.S.C. § 1344(1) and (2), and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). [R. 1.] The Indictment set forth a scheme by which Hall used the names of various family members, who were students at different colleges and institutions, to apply for student loans from several lending institutions between August 2007 and August 2009. *Id.* The Government alleged that Ms. Hall made false representations and pretenses with regard to the loan documents by providing a certain family member's name and personal information in representing that the person was a co-signor to the loan, forging that person's signature on the loan documents, misrepresenting the relationship of borrower and parent on certain forms,

---

[1] The Court is aware of Ms. Hall's unfortunate medical ailments [R. 151], however the standard for release pending appeal does not allow for consideration of health issues in determining whether release is proper.

forging the signatures of various student borrowers, falsifying pay stubs in support of the loan documents, and forging the signature of certain payees on loan proceeds checks. *Id.* at 2-3. According to the Indictment, "Sharon Hall submitted approximately forty false loan applications to approximately ten lending institutions. On many occasions, her loan applications were denied and no loan was funded. On approximately nine occasions, the fraudulent loan applications were approved and funds in the approximate amount of $101,120 were obtained." *Id*. at 3. While the first ten counts of the Indictment reference ten separate loan applications, Count 11 references a request for forbearance. *See id.* at 4. Furthermore, Count 12 charges Sharon Hall with knowingly using the identification of another in connection with the forbearance alleged in Count 11. *Id.*

In January 2018, Sharon Hall stood trial for all charges. At the trial, the Government presented substantial evidence that Ms. Hall submitted loan documents that contained inauthentic signatures to several lending institutions. Additionally, the Government's evidence showed Hall submitted, in connection with certain loan documents, pay stubs that had been altered. Ms. Hall's primary defense was that she lacked the requisite knowledge and intent to commit fraud, and she had permission from the student-borrowers and co-signers to sign their respective names to certain loan documents. The jury ultimately found Ms. Hall guilty on all twelve counts. Following the jury verdict, Hall filed a Motion for Judgment of Acquittal. [R. 60.] That motion was denied. Ms. Hall was then sentenced on March 26, 2019, to three years in prison. She now seeks release pending her appeal. But that motion must be **DENIED**.

## II

### A

The Bail Reform Act, 18 U.S.C. § 3143(b), creates a presumption against release pending appeal. *United States v. Vance*, 851 F.2d 166, 168 (6th Cir. 1988), *cert. denied*, 488 U.S. 893 (1988). In order to be released pending appeal, a defendant must establish two things: first, he must show, by clear and convincing evidence, that he is not likely to flee or pose a danger to the safety of another person or the community; and second, that the appeal is not for delay and raises a substantial question of law or fact likely to result in reversal, an order for new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. 18 U.S.C. § 3143(b); *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002); *Vance*, 851 F.2d at 167 (noting that defendant bears the burden of overcoming statutory presumption of detention).

In determining whether a question on appeal raises "a substantial question of law or fact," a Court does not need to find that it committed reversible error. *United States v. Pollard*, 778 F.2d 1177, 1181 (6th Cir. 1985). To determine whether the question is, in fact, substantial, "a judge must essentially evaluate the difficulty of the question he previously decided." *United States v. Sutherlin*, 84 F. App'x 630, 631 (6th Cir. 2003) (*quoting United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986)). It must be a "close question" that can "go either way." *Pollard*, 778 F.2d at 1182 (citations omitted). The defendant bears the burden of proving the substantiality of the question. *Vance*, 851 F.2d at 167.

**B**

Sharon Hall argues there are four sufficiently close questions justifying her release pending appeal. Those issues are as follows: (i) a duplicitous indictment; (ii) denial of the Rule 33 motion; (iii) the impropriety of the Prosecution's closing argument; and (iv) forbearance cannot support a conviction on Counts 11 or 12. But Ms. Hall is incorrect, and these are not close questions. The Court explains each in turn.

**1**

Sharon Hall begins with her duplicitous indictment. Because Ms. Hall failed to object to the indictment at trial, Ms. Hall must show her Fifth Amendment rights were violated. And, her Fifth Amendment rights were only violated if her jury verdict risked a lack of unanimity because of juror confusion. But, the risk of a non-unanimous verdict can be cured by: (i) an election by the prosecution as to which theory to pursue; (ii) a particularized jury instruction which advances only one theory; or (iii) an unanimity instruction. *United States v. Shumpert Hood*, 210 F.3d 660, 663 (6th Cir. 2000).

At trial the government pursued only one theory—that is, Ms. Hall created a scheme to defraud banks. For each count, the Prosecution's proof was that Ms. Hall deceived the banks because they did not know that the signatures of the borrowers on the notes were not genuine, or that the supporting documentation was fake. The jury instructions then redounded on that theory and charged the jury only to convict if they were certain beyond a reasonable doubt that Ms. Hall intended on defrauding the bank. By selecting one theory, the Prosecution eliminated the risk of a non-unanimous jury. *United States v. Kakos*, 483 F.3d 441 (6th Cir. 2007). Indeed, this case is distinguishable from *Gordon*, cited by Ms. Hall, where jury confusion was obvious. *United States v. Gordon*, 844 F.2d 1397, 1401 (9th Cir. 1988). In *Gordon*, the jury was given a single

count with two conspiracy theories: conspiracy to defraud the United States or conspiracy to obstruct justice. *Id.* at 1401. After retiring for deliberations, the jury sent a note whether they needed to convict on both objects of the count. *Id.* Rather than answering the question, the judge simply repeated the general conspiracy instructions. *Id.* Implicitly this allowed the jury to convict using either theory and risked a lack of unanimity. *Id*. at 1402. As a result, the Ninth Circuit overturned the conviction. *Id.* Ms. Hall's case shows none of those hallmarks. In her case, the jury only had a single theory on which to convict and demonstrated no outward signs of confusion.

Nor did the Indictment risk jury confusion. Here, there was perfect overlap between the two subsections. *Shaw v. United States*, 137 S. Ct. 462 (2016). Therefore, if Hall was guilty of defrauding the bank, then she would have been guilty of the other chargeable subsection. And, nothing in the indictment would have caused a jury to think it conflicted with the jury instructions. Certainly, the overlap between the two subsections also undermines her claims that she was disadvantaged by the Prosecution's election of a theory at trial.

**2**

The Court's denial of Hall's motion for leave to file a Rule 33 motion does not create a close question. Indeed, the Court appropriately exercised its discretion in denying her Rule 33 motion. A defendant is given fourteen days to file her Rule 29 and Rule 33 motions. Hall properly filed her Rule 29 motion on January 26, 2018, within fourteen days of her conviction. At the same time, her trial counsel filed a motion requesting permission to withdraw. That motion to withdraw was granted on February 9, 2018. On that same day, Hall's new counsel Brian Butler entered an appearance. Then on June 15, 2018, attorneys Bart L. Greenwald and James Adams filed notices of appearances on Sharon Hall's behalf. Hall's Rule 29 motion was

5

denied on July 2, 2018. [R. 97.] Seventeen days after the entry of that Order, Hall filed her Rule 33 Motion. Because she has not provided a reason for excusable neglect for a six-month delay, the Rule 33 Motion was properly denied. [R. 117.] As grounds for the delay, Ms. Hall alleges that Ms. Love could not be expected to file a motion based on ineffective assistance of counsel against herself. But, even if that were true, Ms. Hall's claim only excuses one month of her six-month delay. Ms. Hall has provided no reasonable legal reason, either then or now, why her new counsel delayed in filing the Rule 33 motion.

**3**

The Prosecution's closing argument was not so egregious and flagrant as to create a close question whether the statements merit overturning her conviction. Ms. Hall must overcome a heavy burden and show that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). She cannot.

The propriety of a Prosecutor's statements is subject to a three-step analysis. First, the Court must determine whether the statements made by the prosecutor were improper. Second, the Court looks at if the statements: (i) tended to mislead the jury or prejudice the defendant; (ii) were isolated or extensive; (iii) were accidentally or deliberately made. United States v. Francis, 170 F.3d 546, 549 (6th Cir. 1999). Finally, the court analyzes whether the strength of evidence against the defendant was overwhelming. *Id.* Ms. Hall did not object to the arguments during trial, so the Prosecution's statements are reviewed under a plain error standard. *United States v. Mitchell*, 104 Fed. App'x. 544, 550 (6th Cir. 2004).

Ms. Hall believes that the Prosecutor's statements violated the prohibition on golden rule arguments and prejudiced her in the process. But Ms. Hall misunderstands the rule. Yes,

6

prosecutors cannot urge a conviction based only on the societal harm and not on the evidence of the guilt. *U.S. v. Poandl*, 612 Fed. Appx. 356, 372 (6th Cir. 2015). For example, a jury cannot be told that they place themselves at personal risk if they do not return a conviction. *Hodge v. Hurley*, 426 F.3d 368, 384 (6h Cir. 2005) (citing *City of Cleveland v. Egeland*, 26 Ohio App. 3d 83 (1986). That is not what the Prosecution did. Instead, the Prosecution's closing argument recognized that Ms. Hall's crime had victims and that the jury should ignore extraneous considerations, such as Ms. Hall's status as a grandparent. And a prosecutor is permitted to make an appeal to the jury to act as the community conscious if it is not calculated to incite the passions and prejudices of the jurors. *U.S. v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991).

Similarly, Ms. Hall claims that the Prosecution enflamed the jury by saying that she used the money to purchase Chevrolet Suburbans when she purchased them with the proceeds of a legal settlement are unpersuasive. Due to the fungibility of money, when Ms. Hall decided to purchase a vehicle instead of payback her loans, her conduct is indistinguishable from directly purchasing a vehicle with the loan money. Therefore, the Prosecutor's statement to that effect was not improper.

In any event, the statements that Ms. Hall finds objectionable made up only a small portion of the Prosecution's closing argument. And, even if they were improper, the evidence against Ms. Hall was overwhelming. At trial, Ms. Hall admitted that she prepared the documents, signed the name of her relatives, prepared the alter paystubs, and did not inform the bank. While her defense was that she believed this was legal, her deceitful conduct belied that defense. Therefore, it is unlikely that any of the statements by themselves or in combination influenced Ms. Hall's conviction.

**4**

Ms. Hall's claim about the impropriety as to Count 11 and Count 12 is not a close question. By requesting a forbearance on previously obtained loans, she executed her fraudulent scheme again and put the bank at a greater risk of loss. *United States v. Longfellow*, 43 F.3d 318 (7th Cir. 1994) (holding that renewal of a loan constituted a separate execution of the scheme to defraud). Increasing risk is enough to trigger a violation of 18 U.S.C. § 1344(1). Ms. Hall has provided no case law in the criminal context that forbearance is not enough to render a conviction and her citations to bankruptcy cases are unpersuasive.

**III**

Accordingly, and the Court being sufficiently advised, it is here by **ORDERED** that Defendant's Motion for Bond Pending Appeal filed by Defendant Sharon Hall [**R. 148**] is **DENIED**.

This the 22d day of July, 2019.

Gregory F. Van Tatenhove
United States District Judge